**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARD ANDREW LONG, | Case No. 20-CV-1291 JLS (RBB) |
| Petitioner, | |
| v. | **ORDER: (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY** |
| MARCUS POLLARD, Warden, | |
| Respondent. | |

Petitioner Edward Andrew Long ("Long" or "Petitioner") is a state prisoner, currently in custody at R.J. Donovan State Prison.  He is proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  *See* ECF No. 1 ("Pet."). Having read and considered the Petition; Respondent Marcus Pollard's ("Respondent") Answer (ECF No. 24) and Memorandum of Points and Authorities in support thereof ("Answer," ECF No. 24-1); Petitioner's Traverse ("Traverse," ECF No. 30); the lodgments and other documents filed in this case; and the legal arguments presented by both parties, the Court **DENIES** the Petition and **DENIES** a Certificate of Appealability.

/ / /

/ / /

/ / /

# BACKGROUND

## I.   Factual Background

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  The state appellate court recited the relevant facts as follows:

> At the time of the murder, Long was in long-term romantic relationships with two women, Elizabeth Perez and D.D.  Each woman did not know about Long's relationship with the other.  On June 12, 2016, Perez was staying over at Long's house in San Marcos, California for the weekend.  Perez found a box addressed to D.D., and Long and Perez began to argue.  Perez was upset and locked herself inside her car in Long's garage.  She filmed Long with her cell phone as he stalked around her car, tapping on the windows and hiding his face.

> Long went into his house, retrieved a semiautomatic handgun, and shot Perez in the head.  The bullet entered her right temple and exited near her left earlobe.  She died within minutes.

> Long drove to his father's house.  He told his father that he and Perez were playing with a gun, Perez grabbed the gun, and it accidentally went off.  Long's father told him to call the police, but Long did not agree.  He said he was afraid of going to prison for the rest of his life.

> After around two hours, Long returned home.  Sitting on top of Perez's body, Long drove her car to a nearby freeway offramp, parked it on the shoulder, and walked home.  He cleaned the garage of any broken glass and unsuccessfully searched for the spent bullet.  He threw away his clothes, which were now covered in Perez's blood.  He also threw away the handgun, but only after filing off its serial number and damaging it with a drill and hammer.

/ / /

Long drove to his father's house again.  He said he had made a "big mistake" and confessed to driving Perez's car to a freeway offramp and discarding the handgun.  Long also told his father that he and Perez had been arguing before she was shot.  Long laid on the floor to take a nap but eventually left.  Long's father later contacted police.

A couple days later, Long met D.D. at a hotel in Redlands.  The next day, they drove to Long's house in San Marcos.  D.D. had been wanting to move to Las Vegas for some time.  Long now suggested they make the move, and they left for Las Vegas (via D.D.'s home in Fontana) the same day.  By this time, Long was under police surveillance, and he was later arrested in Las Vegas.  D.D. did not know anything about Perez or the murder.

At trial, D.D. testified that Long had been physically abusive to her approximately 10 times, including grabbing or punching her arms and leaving bruises.  On one occasion, Long strangled D.D. while he held her up against a refrigerator.  Long became dizzy and was afraid for her life.  On another occasion, Long strangled D.D. with both hands while she was on the floor.  A blood vessel in her eye ruptured, and D.D. thought she was going to die.  A couple times D.D. fled to her car to escape Long, and he responded by pounding on the windows and windshield with his fists.

Long had dated another woman, E.S., and he was physically abusive towards her as well.  One night, he pulled out a large chunk of her hair and slammed her to the ground.  A couple months later, during an argument, Long pinned her against a wall and held a knife to her throat.

Long testified in his own defense.  He claimed he shot Perez accidentally.  After Perez found the box addressed to D.D. and became upset, Long said he told her to go home.  Perez went out to her car, and they continued to argue.  Perez sounded her car horn, and Long was worried she would upset his neighbors.  Perez began recording Long, so he started to do things to annoy and antagonize her.  He eventually went into his kitchen and retrieved the handgun.  He claimed he did not know it was loaded.  He said he tapped the gun against Perez's window and told her, " 'Go ahead and record me.  Here's something to

record.'"  He testified he must have pulled the trigger because the gun fired, killing Perez.

Lodgment No. 25, ECF No. 25-16 at 2–4.

## II.   Procedural Background

On September 28, 2016, the San Diego District Attorney's Office filed an Amended Complaint charging Long with one count of murder, a violation of California Penal Code § 187(a), and alleging that he personally and intentionally discharged a firearm causing death within the meaning California Penal Code § 12022.53(d).  Lodgment No. 10, ECF No. 25-1 at 10–12.  Following a jury trial, Long was convicted of first-degree murder.  Lodgment No. 21, ECF No. 25-12 at 3–4.  The jury also found the firearm enhancement to be true.  *Id.*

Long appealed his conviction to the California Court of Appeal.  Lodgment Nos. 23–24, ECF Nos. 25-14–25-15.  The state appellate court upheld his conviction in a written opinion.  Lodgment No. 25, ECF No. 25-16.  Long filed a petition for review in the California Supreme Court, which summarily denied the petition.  Lodgment Nos. 1–2, ECF Nos. 15-1–15-2.

Long then filed a petition for writ of habeas corpus in the California Court of Appeal.  Lodgment No. 3, ECF No. 15-3.  The state appellate court denied the petition in a written opinion.  Lodgment No. 4, ECF No. 15-4.  Long next filed a petition for writ of habeas corpus in the California Supreme Court, which was summarily denied.  Lodgment Nos. 5–6, ECF Nos. 15-5–15-6.  He then filed a second petition for writ of habeas corpus in the California Court of Appeal, which the appellate court denied in a written opinion, and a second petition for writ of habeas corpus in the California Supreme Court, which was denied as successive, citing *In re Clark*, 5 Cal. 4th 750, 767–69 (1993).  Lodgment Nos. 7–9, ECF Nos. 15-7–15-9;  *see also*  https://appellatecases.courtinfo.ca.gov/ search.cfm?dist=0 (search for case no. S265202, last visited July 14, 2021).

Long filed the instant Petition in July 2020.  *See* ECF No. 1.  Respondent filed a Motion to Dismiss on November 30, 2020, which was denied on March 15, 2021.  *See* ECF

Nos. 14, 26.  Respondent filed an Answer and a Memorandum of Points and Authorities in support thereof on March 10, 2021.  *See* ECF Nos. 24, 24-1.  Long filed a Traverse on May 10, 2021.  *See* ECF No. 30.

## ANALYSIS

Long raises five grounds in his Petition, three of which contain sub-claims of ineffective assistance of counsel.  First, he contends that his due process rights were violated by the admission at his trial of uncharged acts.  Pet. at 21–24; Traverse at 3–7.  Second, he claims the jury was improperly instructed.  Pet. at 25–30; Traverse at 7–9.  Third, he contends the trial court should not have imposed a sentence enhancement for the use of a firearm and that his trial and appellate counsel were ineffective for not raising the issue.  Pet. at 31–34; Traverse at 9–11.  Fourth, Long claims that his incompetency prevented him from entering a plea of not guilty and that his trial counsel was ineffective for failing to raise this issue.  Pet. at 35–37; Traverse at 11–12.  Finally, he argues that there was insufficient evidence presented to support his conviction for first-degree murder and that his appellate counsel was ineffective for not raising this issue on appeal.  Pet. at 38–39; Traverse at 12.

Respondent argues the state court's denial of grounds one through three was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and grounds four and five are procedurally defaulted because the state court denied those claims as successive, citing *Clark*.  *See* Answer at 9–11.  In the alternative, Respondent argues grounds four and five are meritless.  *See id.* at 16–17.

## I.   Procedural Default

The Ninth Circuit has held that because procedural default is an affirmative defense, in order to establish a claim is procedurally defaulted, the respondent must first "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  In order to place the defense at issue, the petitioner must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id*.  The "ultimate burden" of proving procedural

default, however, belongs to the state.  *Id*.  If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law.  *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983); *Harris v. Reed*, 489 U.S. 255, 265 (1989).  A ground is "interwoven" with federal law if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed.  *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).  "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'"  *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)).  All cases cited by a state court must be independent and adequate to bar federal review of the claims.  *Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000).

The Ninth Circuit has not yet addressed whether California's rule against successive petitions, as enunciated in *Clark*, is independent and adequate.   District courts in California—including courts within this District—have concluded, however, that it is.  *See Russell v. Borders*, No. 2:17-cv-02487-DMC, 2021 WL 616933, at *8 (E.D. Cal. Feb. 17, 2021); *Taylor v. Jaime*, No. 19-cv-05664-SI, 2021 WL 1553966, at * 8 (N.D. Cal. Apr. 20, 2021); *Cruz v. Montgomery*, No. SACV 20-2193 CAS (MRW), 2021 WL 2828245 (C.D. Cal. May 11, 2021); *Knight v. Diaz*, No. 18-cv-2884-AJB (BGS), 2020 WL 1508377, at *6 (S.D. Cal. March 30, 2020); *Acevedo v. Fisher*, No. 17-cv-2346-GPC (JMA), 2020 WL 4015140, at *4 (S.D. Cal. July 16, 2020); *Luckett v. Matteson*, No. 18-cv-07670-HSG (PR), 2020 WL 6868834, *10 (N.D. Cal. Nov. 23, 2020); *Blackwell v. McDowell*, No. CV 19-9870-PSG (PLA), 2020 WL 8455112, at *9 (C.D. Cal. Dec. 7, 2020).  Accordingly, this Court concludes that Respondent has "adequately pled the existence of an independent and adequate state procedural ground . . . ."  *Bennett v. Mueller*, 322 F.3d at 586.  The burden

thus shifts to Long to "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id.* Long has not done so. *See generally* Pet.; *see also* Traverse at 11–12. Federal review of grounds four and five is thus foreclosed unless Long can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Long has failed to establish either cause or prejudice. The "cause" prong is satisfied if Long can demonstrate some "objective factor" that precluded him from raising his claims in state court, such as interference by state officials or constitutionally ineffective counsel. *McClesky v. Zant*, 499 U.S. 467, 493–94 (1991). Although Long alleges his trial counsel was ineffective for failing to raise ground four and his appellate counsel was ineffective for failing to raise ground five, the Court concludes, as discussed below in Sections II(B)(4) and (5), that neither his trial nor appellate counsel were ineffective. Long has not provided any other "objective factor" which prevented him from properly raising his claims in state court. *See generally* Pet.; Traverse. "Prejudice [sufficient to excuse procedurally barred claims] is actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Long has not demonstrated he suffered prejudice because, as discussed below in Sections II(B)(4) and (5), his claims are meritless.

Long also has not shown that failure to review his defaulted claims "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that "a constitutional violation has probably resulted in one who is actually innocent*." Schlup v. Delo*, 513 U.S. 298, 327 (1995). In *Schlup*, the Supreme Court explained that a petitioner's claim of actual innocence can act as a "gateway" to having his otherwise procedurally defaulted claims considered by a federal court. *Schlup*, 513 U.S. at 326–27. However, the Supreme Court has noted that the standard is "demanding." *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless

the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id*. (quoting *Schlup*, 513 U.S. at 316); *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (holding that "actual innocence" means factual innocence, not simply legal insufficiency, and that a mere showing of reasonable doubt is not enough).  Long has not provided the Court with any evidence supporting a conclusion that he is actually innocent of the charges of which he was convicted.

For the foregoing reasons, the Court concludes that grounds four and five of Long's Petition are procedurally defaulted.  They are also meritless, as discussed below in Sections II(B)(4) and (5).

## II.    Merits

### A.    *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication resulted in a decision that was (1) contrary to, or involved an unreasonable application of, clearly established federal law; or (2) based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases or decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal

principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst*, 501 U.S. at 805–06. If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75–76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of section 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

### B. Analysis

#### 1. Admission of Uncharged Acts (Ground One)

Two women testified at Long's trial that Long had physically assaulted them in the past. *See* Lodgment No. 17, ECF No. 25-8 at 35–47; Lodgment No. 18, ECF No. 25-9 at 78–83. The testimony was admitted pursuant to California Evidence Code § 1109, which reads:

> Except as provided in subdivision (e) or (f), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of

/ / /

9

> other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.[1]

Long contends his due process rights were violated by the admission of these prior uncharged acts.  Pet. at 10, 21–24; Traverse at 3–7.

Long raised this claim in the petition for review he filed in the California Supreme Court on direct review.  *See* Lodgment No. 1, ECF No. 15-1.  The California Supreme Court summarily denied the petition.  *See* Lodgment No. 2, ECF No. 15-2.  This Court must therefore "look through" to the state appellate court's denial of the claim to determine whether it was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Ylst*, 501 U.S. at 805 –06.  That court wrote:

> Long contends his constitutional right to due process of law was violated by the admission of testimony from D.D. and E.S. describing uncharged acts of domestic violence.  The Evidence Code contains a general prohibition on the admission of evidence of a person's character or trait (including specific acts) when it is offered to prove the person's conduct on a specified occasion.  (Evid. Code, § 1101, subd. (a).)  But an exception to the general prohibition exists for certain types of evidence, including acts of domestic violence.  (*Id.*, § 1109, subd. (a)(1).)  The trial court relied on that exception to admit the testimony at issue here.
>
> Our Supreme Court has concluded, in the analogous context of sexual offenses, that this exception does not violate principals of constitutional due process.  (*People v. Falsetta* (1999) 21 Cal.4th 903, 922 (*Falsetta*).)  The Courts of Appeal have extended this reasoning to acts of domestic violence.  (See *People v. Johnson* (2010) 185 Cal.App.4th 520, 529 (*Johnson*) [collecting cases].)

---

[1] California Evidence Code § 1101 states, in pertinent part, that "evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion," but is admissible "to prove some fact (such as motive, opportunity, intent, preparation, plan, . . .) other than his or her disposition to commit such an act."  California Evidence Code § 352 states that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Long does not attempt to distinguish *Falsetta* or its progeny. Instead, he asks this court to "reexamine" *Falsetta* to determine whether defendants' due process rights have been adequately protected in the intervening years. But it is not our function to engage in such reexamination. "Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of *stare decisis* makes no sense. The decisions of [the California Supreme Court] are binding upon and must be followed by all the state courts of California . . . . Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Although we may conclude under certain circumstances that a Supreme Court opinion has been impliedly overruled by later trends in jurisprudence (see, e.g., *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club* (2006) 140 Cal.App.4th 1120, 1131), such circumstances are not present here. Since it was decided, *Falsetta*'s reasoning has been repeatedly endorsed by the Supreme Court and Courts of Appeal. (See, e.g., *People v. Merriman* (2014) 60 Cal.4th 1, 46; *People v. Wilson* (2008) 44 Cal.4th 758, 797; *Johnson*, *supra*, 185 Cal.App.4th at p. 529.) Long provides no reason to depart from this consensus. He claims that "[p]ropensity evidence under [Evidence Code] section 1109 is rarely excluded," but the authorities he cites do not support that claim. Moreover, it is unclear how that claim would affect our obligation to follow *Falsetta*. We

reject Long's request to "reexamine" *Falsetta*, and find his arguments in support of this request unpersuasive.

Lodgment No. 25, ECF No. 25-16 at 11–13.

As Respondent notes, there is no clearly established Supreme Court law that holds that character or "propensity" evidence is inadmissible or violates due process. Indeed, the Supreme Court expressly reserved deciding that issue in *Estelle v. McGuire*, 502 U.S. 62,

/ / /

11

75 n.5 (1991); *see Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008); *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006). As the Ninth Circuit has noted:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [citation omitted], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application."

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Williams v. Taylor*, 529 U.S. 362, 375 (2000), *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

In fact, Ninth Circuit precedent "squarely forecloses" the claim that admission of propensity evidence violates due process. *Mejia*, 534 F.3d at 1046; *see also Chavarria v. Hamlet*, 472 F. App'x 749, 750 (9th Cir. 2012); *Greel v. Martel*, 472 F. App'x 503, 504 (9th Cir. 2012). Thus, because there is no clearly established Supreme Court law holding the admission of propensity evidence violates due process, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Musladin*, 549 U.S. at 77.

Moreover, there was no error in admitting the evidence under general due process principles. In order to establish that an evidentiary ruling violated his due process rights, a petitioner must show that "there are *no* permissible inferences the jury may [have] draw[n] from the evidence." *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (emphasis in original). Evidence of Long's prior physical assaults on his girlfriends was undeniably relevant to the jury's decision as to whether he shot Perez accidentally or intentionally, which was the central issue in the case. The prior uncharged conduct helped establish the necessary intent to convict Long of the crimes.

For the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. 28 U.S.C.

§ 2254(d); *Yarborough*, 540 U.S. at 4.  Nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).  Accordingly, Long is not entitled to relief as to this claim.

### 2.    *Jury Instructions (Ground Two)*

Long argues in ground two that the jury was improperly instructed regarding the difference between first- and second-degree murder and provocation.  *See* Pet. at 25–30; Traverse at 7–9.  Specifically, he claims the instructions misled the jury regarding the kind of provocation required to reduce first-degree murder to second-degree murder and second-degree murder to manslaughter.  *Id.*  Respondent contends that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *See* Answer at 13–14.

Long raised this claim in the petition for review he filed in the California Supreme Court on direct review.  *See* Lodgment No. 1, ECF No. 15-1.  The California Supreme Court summarily denied the petition.  *See* Lodgment No. 2, ECF No. 15-2.  Thus, this Court must "look through" to the state appellate court's denial of the claim to determine whether it was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Ylst*, 501 U.S. at 805–06.  That court wrote:

> "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant." (*People v. Cross* (2008) 45 Cal.4th 58, 67–68; accord, *People v. Landry* (2016) 2 Cal.5th 52, 95.) "'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'" (*People v. Carrington* (2009) 47 Cal.4th 145, 192.) "Also, '"we must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.'"'" *People v. Sattiewhite* (2104) 59 Cal.4th 446, 475.)
>
> Long argues that the jury instructions could have misled the jury into believing that, in order for provocation to reduce first degree murder to second degree murder, the third element

of voluntary manslaughter based on sudden quarrel or heat of passion must have been satisfied. This element requires the jury to view the required provocation through an objective lens, i.e., that the provocation would have caused a person of *average disposition* to act rashly and without due deliberation.

Long's argument was considered and rejected in *People v. Jones* (2014) 223 Cal.App.4th 995 (*Jones*) and *People v. Hernandez* (2010) 183 Cal.App.4th 1327 (*Hernandez*). After reviewing the applicable law, *Jones* found that CALCRIM Nos. 520, 521, 522, and 570 were not misleading. It explained, "[The instructions] accurately inform the jury what is required for first degree murder, and that if the defendant's action was in fact the result of provocation, that level of crime was not committed. CALCRIM Nos. 521 and 522, taken together, informed jurors that 'provocation (the arousal of emotions) can give rise to a rash, impulsive decision, and this in turn show no premeditation and deliberation.' [Citation.] As the jury was also instructed, a reduction of murder to voluntary manslaughter requires more. It is here, and only here, that the jury is instructed that provocation alone is not enough for the reduction; the provocation must be sufficient to cause a person of average disposition in the same situation, knowing the same facts, to have reacted from passion rather than judgment." (*Jones*, at p. 1001.) Similarly, this court in *Hernandez* emphasized that CALCRIM No. 522 "plainly states the jury should consider provocation for *both* second degree murder and manslaughter. There is nothing in the instruction that suggests the jury might have failed to fully consider the provocation evidence for second degree murder based on a rejection of the evidence for manslaughter." (*Hernandez*, at p. 1335.)

Long criticizes the reasoning in *Jones* as unrealistically legalistic. He claims, "It is unrealistic to assume that a jury consisting of lay people could make the logical leap from the detailed instruction on the provocation to reduce murder to manslaughter to the conclusion that the provocation to reduce first degree murder to second degree murder is something different." We disagree. The court's jury instruction, CALCRIM No. 521, identified the specific elements the prosecution was required to prove in order to obtain a first degree murder conviction ("willfully, deliberately, and with

premeditation") and defined those elements for the jury.  If the jury believed that Long was provoked in a manner that would prevent it from finding those elements beyond a reasonable doubt, nothing in the court's other jury instructions prevented or misled the jury from doing so.

The detailed discussion of provocation in CALCRIM No. 570 applied only to voluntary manslaughter.   There is no reasonable likelihood the jury believed this discussion applied to it consideration of first degree murder as well.  We agree with *Jones* and *Hernandez* and conclude Long has not shown error.

Lodgment No. 25, ECF No. 25-16 at 8–10.

To obtain relief for jury instruction error, a petitioner must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' [citation omitted.]"  *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  A petitioner may not obtain relief by showing an instruction is merely "undesirable, erroneous, or even 'universally condemned.'"  *Cupp*, 414 U.S at 146; *see also Henderson v. Kibbe*, 431 U.S. 143, 154 (1977).  Moreover, the allegedly erroneous jury instruction cannot be judged in isolation. *Estelle*, 502 U.S. at 72.  Rather, it must be considered in the context of the entire trial record and the jury instructions as a whole.  *Id*.

As the jury was instructed, a homicide, the "killing of one human being by another," may be either lawful or unlawful, and an unlawful killing is either murder or manslaughter. *See* Lodgment No. 10, ECF No. 25-1 at 97 [CALCRIM No. 500].  Long was charged with one count of murder in the death of Perez.  *Id.* at 10–12.  The California Penal Code divides murder into first- and second-degree.   First-degree murder is defined as the "unlawful killing of a human being . . . with malice aforethought" and with "premeditation and deliberation."  Cal. Penal Code §§ 187(a), 189(a).  Second-degree murder is defined as the "unlawful killing of a human being . . . with malice aforethought."  *Id*. §§ 187(a), 189(b). Thus, in California, all murders are of the second degree unless the prosecution proves beyond a reasonable doubt that the defendant committed the murder with premeditation

and deliberation. *See* CALCRIM Nos. 520, 521; *see also* Lodgment No. 10, ECF No. 25-1 at 98–101; *People v. Taylor*, 48 Cal. 4th 574, 623 (2010) (stating that "it is settled that 'second degree murder is a lesser included offense of first degree murder'") (quoting *People v. Blair*, 36 Cal. 4th 686, 745 (2005)).

The prosecution proceeded on a theory of first-degree murder, while the defense centered around Long's claim that he did not intend to shoot or kill Perez and that the gun went off accidentally when he tapped it against the car window during an argument. The jury was thus instructed on the crimes of first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter. Voluntary manslaughter is defined as "the unlawful killing of a human being without malice . . . [and] upon a sudden quarrel or heat of passion." Cal. Penal Code § 192(a). Involuntary manslaughter is defined as "the unlawful killing of a human being without malice . . . in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." *Id.* § 192(b).

Under California law, provocation can reduce a murder from first-degree to second-degree if the provocation is sufficient to negate premeditation and deliberation. *See People v. Jones*, 223 Cal. App. 4th 995, 1000–01 (2014); *People v. Hernandez*, 183 Cal. App. 4th 1327, 1333–34 (2010). Provocation can also reduce murder to manslaughter so long as both "subjectively felt heat of passion and objectively reasonable provocation" are present. *People v. Wright*, 242 Cal. App. 4th 1461, 1480 (2015). As the court in *Jones* noted:

> Thus, a subjective test applies to provocation as a basis to reduce malice murder from the first to the second degree: it inquires whether the defendant in fact committed the act because he was provoked. The rationale is that provocation may negate the elements of premeditation, deliberateness and willfulness that are required for that degree of the crime. (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1333, 107 Cal.Rptr.3d 915 (*Hernandez* ).) But more is required to reduce malice murder to voluntary manslaughter. For that, an objective test also applies: the provocation must be so great that, in the words of CALCRIM No. 570, it "would have caused a person of average disposition

to act rashly and without due deliberation, that is, from passion rather than from judgment."

223 Cal. App. 4th at 1000.

After being instructed on the elements of first- and second-degree murder and told that, in order to find Long guilty of first-degree murder, they had to conclude Long killed Perez willfully, deliberately, and with premeditation, the jurors were instructed as follows:

522. Provocation: Effect on Degree of Murder

Provocation may reduce a Murder from first degree to second degree and may reduce Murder to Manslaughter. The weight and significance of the provocation, if any, are for you to decide.

If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.

. . . .

570. Voluntary Manslaughter: Heat of Passion – Lesser
Included Offense
(Pen. Code, § 192(a))

Voluntary Manslaughter is a lesser included offense of Murder.

A killing that would otherwise be murder is reduced to Voluntary Manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion.

The defendant killed someone because of a sudden quarrel or in the heat of passion if:

1. The defendant was provoked;

2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment;

AND

    3. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.

Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.

In order for heat of passion to reduce a Murder to Voluntary Manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time.

It is not enough that the defendant was simply provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment.

If enough time passed between the provocation and the killing for a person of average disposition to "cool off" and regain his or her clear reasoning and judgment, then the killing is not reduced to Voluntary Manslaughter on this basis.

The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as the result of a sudden quarrel or in the heat of passion.

If the People have not met this burden, you must find the defendant not guilty of Murder.

Lodgment No. 10, ECF No. 25-1 at 105–06 (CALCRIM Nos. 522, 570).

    These instructions provided a clear roadmap for the jury to follow. The jury was told to determine whether Long committed a murder—that is, whether he "committed an

act that caused the death of another person" with either actual or implied malice. *Id*. at 98–100 (CALCRIM Nos. 520, 521). If the members of the jury concluded the prosecution had proven these elements beyond a reasonable doubt, they were told the murder was of the second degree unless the prosecution proved beyond a reasonable doubt that the murder was committed with "deliberation and premeditation." *Id.* at 100–01 (CALCRIM Nos. 520, 521). If they determined that Long had acted with deliberation and premeditation, that is, he committed a first-degree murder, the instructions told them to consider whether Long was sufficiently provoked to reduce the first-degree murder finding to second-degree murder, and that "[t]he weight and significance of the provocation, if any, are for you to decide." *Id.* at 105 (CALCRIM No. 522).

Because the preceding instructions had explained that the difference between first- and second-degree murder was whether the prosecution had proven beyond a reasonable doubt that Long acted with premeditation and deliberation, a rational jury would conclude the provocation instruction applied to the premeditation and deliberation element. If the jury decided provocation did not negate premeditation and deliberation, its task was complete and Long was convicted of first-degree murder. On the other hand, if the jurors did determined that the provocation reduced the murder from first- to second-degree, the instruction told them to "also[] consider the provocation in deciding whether the defendant committed murder or manslaughter." *Id.* The next instruction explained the elements of voluntary manslaughter and the kind of provocation required to reduce murder to manslaughter. *Id.* at 106–07 (CALCRIM No. 570). This instruction told the jury that, in order to find that a second-degree murder had been reduced to a manslaughter, it had to conclude that Long had "acted rashly and under the influence of intense emotion that obscured his reasoning or judgment," and that "the provocation would have caused a person of average disposition to act rashly and without due deliberation." *Id*. at 106 (CALCRIM No. 570). The jurors were also told the prosecution had to prove beyond a reasonable doubt that Long "did not kill as the result of a sudden quarrel or heat of passion." / / /

*Id.*  Finally, they were told to consider the most serious crimes first.  *See* Lodgment No. 10, ECF No. 25-1 at 115–16 (CALCRIM No. 640).

These instructions were a correct statement of California law, and juries are presumed to follow a court's instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Long's contention that the jury could have applied the provocation portion of the voluntary manslaughter instruction to the provocation instruction relating to first- and second-degree murder is speculation.  Because there is no error in the instructions, Long has not established that his conviction violated due process.  *See Murtishaw*, 255 F.3d at 971; *see also Hernandez v. Martel*, No. EDCV 11-1172 JAK (JPR), 2013 WL 3983253, at *6 (C.D. Cal. Aug. 1, 2013) (rejecting petitioner's claim that "CALCRIM No. 522 . . . fails to make clear that provocation that is insufficient to reduce a killing from murder to manslaughter may nonetheless reduce murder from first to second degree"); *Rimoldi v. Gonzalez*, No. EDCV 09-1197 MMM (JC), 2021 WL 4356234, at *6 (E.D. Cal. June 21, 2012) (concluding that CALCRIM Nos. 521 and 522 "adequately explained that provocation can mitigate first degree murder to second degree murder and did not deprive petitioner of due process").

Further, even if the jury instructions were erroneous, in order to obtain federal habeas corpus relief, Long must establish that the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *Murtishaw*, 255 F.3d at 971.  Because the evidence of provocation was extremely weak, Long has not surmounted this hurdle.  Long testified that he and Perez began verbally fighting after she found evidence that he was seeing another woman at Long's house.  *See* Lodgment No. 19, ECF No. 25-10 at 18–20.  When Long told Perez to go home, Perez "just went in her car and sat there."  *Id.* at 20.  Long and Perez continued fighting, and Long opened the garage door and told Perez to leave again.  *Id.* at 21.  According to Long, Perez instead began honking the horn of her car, and Long closed the garage door so as not to disturb his neighbors.  *Id.*  As Perez and Long continued to argue, Perez began recording Long as he

was walking around Perez's car with various objects from the garage, such as a box and a weed blower, to "antagonize" her. *Id.* at 22. Perez continued to honk the horn of her car until Long went into his house to "give her a few minutes to try to cool off." *Id.* at 24. When Long went back into the garage, Perez began honking the horn again. *Id.* At that point, Long retrieved his gun from the kitchen and "start[ed] tapping on her window" and telling Perez to "[g]o ahead and record me" and "[h]ere's something to record." *Id*. at 26. Long testified it was then that the gun went off, shooting Perez in the head. *Id.* at 27. Long claimed that he did not intend to shoot Perez but did intend to "up the ante and antagonize [Perez] further." *Id.* Further, Long's father, Larry Long, testified that Long came to his house after the shooting and told him that Long and Perez were "playing around and [Long] had a gun and [Perez] accidentally grabbed the gun and it went off and shot her in the head." Lodgment No. 18, ECF No. 25-9 at 113.

Given this evidence, the failure to give a more specific instruction on provocation as it relates to reducing first-degree murder to second-degree murder did not have a substantial and injurious effect on the jury's verdict. *Brecht*, 507 U.S. at 623. Long testified the gun went off accidentally while he was "up[ping] the ante and antagoniz[ing]" Perez by tapping the gun on the car window, not that he was so provoked by the argument that he shot Perez. Further, the argument between Long and Perez centered around Long's infidelity, Perez's refusal to leave, and her honking the horn loud enough to disturb Long's neighbors. It strains belief that a jury would conclude these events were sufficient provocation to negate a finding of premeditation and deliberation and reduce a first-degree murder to a second-degree murder.

For the foregoing reasons, the state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2244(d)(2). Accordingly, Long is not entitled to relief as to this claim, either.

/ / /

/ / /

### 3.   *Sentence Enhancement (Ground Three)*

In ground three, Long argues that the trial judge should not have imposed a sentence enhancement for personally and intentionally discharging a firearm within the meaning of California Penal Code § 12022.53(d).  *See* Pet. at 31–34; Traverse at 9–11.  Long contends, first, that the charged enhancement was "grossly improper" and "out of proportion to the evidence"; and, second, that the legislative intent behind the statute makes it clear the enhancement was meant for gang crimes.  *Id*.  Third, he contends the sentence violates double jeopardy principles.  *See id*.  Finally, he claims that his trial counsel was ineffective for failing to challenge the imposition of the sentence enhancement and his appellate counsel was ineffective for failing to raise this ground on appeal.  *See id*.  Respondent argues that the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *See* Answer at 14–16.

Long raised this claim in a habeas corpus petition he filed in the California Supreme Court on April 16, 2020.  *See* Lodgment No. 5, ECF No. 15-5.  The California Supreme Court summarily denied the petition.  *See* Lodgment No. 6, ECF No. 15-6.  This Court must therefore "look through" to the last reasoned state court decision denying this claim, the state appellate court decision denying Long's February 18, 2020 petition for writ of habeas corpus, to determine whether the denial was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Ylst*, 501 U.S. at 805–06.  The state appellate court wrote:

> Sentencing [Long] for both murder and a firearm enhancement did not constitute prohibited double jeopardy, because the murder and enhancement statutes punish different conduct, cumulative punishment is authorized by the statutes, and the punishments were imposed in the same, not successive, proceedings. (*People v. Sloan* (2007) 42 Cal.4th 110, 120–121; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1212.)  Courts have repeatedly rejected cruel and unusual punishment challenges to imposition of a consecutive prison term of 25 years to life for personally and intentionally discharging a firearm causing great

bodily injury or death.  (E.g., *People v. Vallejo* (2013) 214 Cal.App.4th 1033, 1045; *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1212–1216; *People v. Gonzales* (2001) 87 Cal.App.4th 1, 16–19; *People v. Martinez* (1999) 76 Cal.App.4th 489, 493–498.)  Long has not explained how he was likely to succeed where so many others have failed.  His assertion the firearm enhancement should not have been imposed on him, because it only applies to "the most aggravated gun related crimes," such as gang-related murders, is wrong.  The enhancement does apply to gang-related murders (Pen. Code, § 12022.53, subds. (a)(1), (d), (e)), but it also applies to many other felonies in which the defendant personally and intentionally discharges a firearm causing great bodily injury or death, including the murder by shooting of which Long was convicted (*id.*, § 12022.53, subds. (a), (d)).

Lodgment No. 4, ECF No. 15-4 at 2–3.

The Court will address each of Long's arguments in turn.

### a. Disproportionate Sentencing

First, Long contends that the sentence of twenty-five years to life that he received for the California Penal Code § 12022.53(d) firearm enhancement is "out of proportion to the evidence."  Pet. at 31, 33; Traverse at 9–11.  In *Andrade*, the U.S. Supreme Court concluded that the only clearly established legal principle that could be discerned from its Eighth Amendment jurisprudence was that "[a] gross disproportionality principle is applicable to sentences for a term of years . . . . [T]he precise contours of [the principle] are unclear, [and it is] applicable only in the 'exceedingly rare' and 'extreme' case."  538 U.S. at 72–73 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)).  The Supreme Court also explained that "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle . . . ."  *Id*. at 76 (quoting *Harmelin*, 501 U.S. at 998).  Because of this, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case."  *Id*. at 77.

The Ninth Circuit has applied these principles and has given this Court some guidance as to the kind of "exceedingly rare" Eighth Amendment claim that warrants

federal habeas relief.  *See Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000) ("[Ninth Circuit] cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'").  In *Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004), the Ninth Circuit concluded that a sentence of twenty-five years to life for the nonviolent shoplifting of a $199.00 VCR player, where the defendant's prior convictions were two nonviolent second-degree robberies, violated the Eighth Amendment.  And in *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir. 2008), the Ninth Circuit struck down a sentence of twenty-eight years to life imposed on a defendant who had failed to update his sex offender registration within five days of his birthday.  The Ninth Circuit found that there was no "rational relationship between Gonzalez's failure to update his sex offender registration annually and the probability that he will recidivate as a violent criminal or sex offender."  *Id*. at 887.  Without a rational connection between Gonzalez's past behavior and his current conviction, there was no justification for an increased sentence for the "passive, harmless and technical violation of the registration law."  *Id*. at 885.

The Ninth Circuit has upheld sentences, however, in cases where either the triggering offense or the defendant's prior record involves violence or the threat of violence.  Thus, in *Rios v. Garcia*, 390 F.3d 1082, 1086 (9th Cir. 2004), the Ninth Circuit concluded that a sentence of twenty-five years to life for a conviction for felony petty theft did not violate the Eighth Amendment because Rios "struggled with the loss prevention officer and tried to avoid apprehension . . . .  [H]is prior robbery 'strikes' involved the threat of violence because his cohort used a knife . . . .  Rios [had] a lengthy criminal history, beginning in 1982, and he ha[d] been incarcerated several times."  Likewise, in *Taylor v. Lewis*, 460 F.3d 1093, 1100 (9th Cir. 2006), the Ninth Circuit upheld a sentence of twenty-five years to life for felony possession of cocaine and misdemeanor possession of drug paraphernalia.  Although the triggering offense was nonviolent, Taylor's prior convictions included second-degree burglary, robbery with a firearm, and voluntary

manslaughter with the use of a weapon. *Id.* And in *Norris v. Morgan*, 622 F.3d 1276 (9th Cir. 2010), the Ninth Circuit upheld a sentence of life without parole for a child molestation conviction under Washington's "two strikes" law. In conducting de novo review of Norris' Eighth Amendment challenge on habeas review, the Ninth Circuit began by analyzing whether "'the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" *Id.* at 1290 (quoting *Harmelin*, 501 U.S. at 1005). The Ninth Circuit instructed that the "harshness of the penalty imposed upon the defendant" is to be compared to "the gravity of the triggering offense" and indicated that a court can consider the state's justification for the sentencing scheme and "the actual harm caused to his victim or to society." *Id.* (citations omitted). In *Sartoresi v. Horel*, a district court judge noted that "district courts in the Ninth Circuit have repeatedly rejected claims that sentences imposed under section 12022.53 violate the Eighth Amendment." No. EDCV 08-00901-GW (VBK), 2010 WL 476698, at *13 (C.D. Cal. Feb. 1, 2010) (citing *Wright v. Yates*, 2009 WL 1392071, at *19–20 (E.D. Cal. May 14, 2009) (finding a sentence of 25 years-to-life for a firearm use enhancement, and an aggregate sentence of 40 years-to-life for a murder conviction and the enhancement not cruel and unusual punishment); *Valera v. Kane*, No. C 05-2568 JSW (PR), 2008 WL 4449610, at *11–13 (N.D. Cal. Sept. 30, 2008) (finding 34 years and eight months for attempted murder, assault with deadly weapon, shooting into inhabited dwelling, and firearm enhancements not cruel and unusual punishment); *Vargas v. Pliler*, No. CV F 03-6622 OWW WMW HC, 2006 WL 2067079, *3–4 (E.D. Cal. July 24, 2006) (finding a more-than-13-year sentence enhancement and a ten-year consecutive sentence not cruel and unusual punishment)).

Here, Long was convicted of first-degree murder with personal and intentional discharge of a firearm causing death. *See* Lodgment No. 21, ECF No. 25-12 at 3–4. His sentence of twenty-five years to life for each of these crimes is not the kind of "extraordinary case" that amounts to a constitutional violation for disproportionality. *Andrade*, 538 U.S. at 76.

/ / /

Long also claims that the trial court ignored the fact that he did not intentionally fire the weapon that killed Perez.  Pet. at 34; Traverse at 9–11.  Although Long claimed at trial he did not intend to shoot Perez, the jury concluded otherwise.  *See* Lodgment No. 21, ECF No. 25-12 at 3–4.  Thus, once the jury had rendered its verdict and found the section 12022.53(d) enhancement true, the trial judge was permitted to impose a sentence for the enhancement.  Accordingly, this argument is without merit.

### b.  Application to Crimes Other Than Gang Related Offenses

Second, Long argues the trial court should not have applied the California Penal Code § 12022.53(d) sentence enhancement for intentionally and personally discharging a firearm causing death because that code section "usually involves gang crimes."  Pet. at 31–32; Traverse at 9–11.  As an initial matter, federal habeas corpus relief is not available for alleged violations of state law.  *Estelle*, 502 U.S. at 67–68.  In any event, the statute is not limited to gang crimes.  The plain wording of the statute applies the enhancement to the crime of murder without restriction.  *See* Cal. Penal Code § 12022.53(a) (providing that "[t]his section applies to . . . murder . . ."); *id.* § 12022.53(d) (expressly noting that a person who, in the commission of any of the offenses described in subsection (a), "intentionally discharges a firearm and proximately causes . . . death . . ." shall be punished with an additional and consecutive term of punishment).  Further, "[t]he stated legislative purpose of section 12022.53 is to impose progressively longer prison sentences on felons who use firearms in the commission of enumerated crimes," and "[i]t is to be construed expansively, not narrowly."  *People v. Frausto*, 180 Cal. App. 4th 890, 898 (2009).  Accordingly, this argument is similarly lacking in merit.

### c.  Double Jeopardy

Third, Long claims that "the 25 to life enhancement [of section 12022.53(d)] violates [his] Fifth Amendment right [against being] punished a second time for a crime."  Pet. at 31.  The Double Jeopardy Clause of the Fifth Amendment (the "Clause") guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  Essentially, the Clause guards against (1) a second prosecution for

the same offense after acquittal or conviction; and (2) multiple punishments for the same offense.  *See Witte v. United States*, 515 U.S. 389, 395–96 (1995) (citing *United States v. Dixon*, 509 U.S. 688, 704 (1993)).  To determine if two criminal acts constitute the "same offense," federal courts apply the test established by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932): "where the same act or transaction constitutes a violation of two distinct statutory provisions," the Clause is not violated if "each [offense] requires proof of a fact which the other does not."  If a court determines that the crimes are indeed separate under this analysis, cumulative punishments may be imposed.  *Id*.

Long was convicted of first-degree murder, and the jury found that he personally and intentionally discharged a firearm causing death.  Lodgment No. 21, ECF No. 25-12 at 3–4.  A person commits first-degree murder when he or she unlawfully kills a human being with malice and with premeditation and deliberation.  Cal. Penal Code §§ 187–189.  A person is eligible for a sentence enhancement pursuant to California Penal Code § 12022.53(d) if he or she "personally and intentionally discharges a firearm and proximately causes . . . death[] to any person other than an accomplice . . . ."  Each of these offenses "requires proof of a fact which the other does not."  *Blockburger*, 284 U.S. at 304.  Accordingly, separate sentences for the violation of each of these offenses do not offend the Double Jeopardy Clause.

In sum, the imposition of the section 12022.53(d) enhancement was not disproportionate and did not violate double jeopardy principles.  Long's claims that the imposition of the enhancement was improper because it was meant to be imposed only in gang cases is not cognizable on federal habeas and, in any event, is not supported by California law.  Accordingly, the state court's denial of these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  *Bell*, 535 U.S. at 694.  Nor was said denial based on an unreasonable determination of the facts.  28 U.S.C. § 2244(d)(2).  Thus, Long is not entitled to relief for these claims.

/ / /

/ / /

### d. Ineffective Assistance of Counsel

Lastly, Long claims both his trial and appellate counsel were ineffective for not challenging the imposition of the section 12022.53(d) enhancement.  *See* Pet. at 31, 33–34; Traverse at 10–11.  He  raised these claims in a habeas corpus petition he filed in the California Supreme Court on April 16, 2020.  *See* Lodgment No. 5, ECF No. 15-5.  The California Supreme Court summarily denied the petition.  *See* Lodgment No. 6, ECF No. 15-6.  This Court must therefore "look through" to the last reasoned state court decision denying this claim, which is the state appellate court decision denying Long's February 18, 2020 petition for writ of habeas corpus, to determine whether the denial was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Ylst*, 501 U.S. at 805–06.

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  The petitioner also must show that he was prejudiced by counsel's errors.  *Id*. at 694.  Prejudice can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  Further, *Strickland* requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential."  466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  *Id*. at 686–87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing as to either one.  *Id*. at 697.

Ineffective assistance of appellate counsel claims also are subject to *Strickland*'s standard of review.  Long first must show that his appellate counsel's performance was objectively unreasonable—"that is, that counsel unreasonably failed to discover

nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  He must also show "a reasonable probability that, but for his counsel's unreasonable failure . . . , he would have prevailed on his appeal." *Id.* at 285–86.

The state appellate court found that Long had failed to state a prima facie case for relief because he failed to provide any evidence showing that his attorney's performance "fell outside the range of reasonable professional judgment" or that "but for that failure there is a reasonable probability the court would have dismissed or stricken the enhancement." Lodgment No. 4, ECF No. 15-4 at 2 (citing *Strickland*, 466 U.S. at 690, 694).  Long's claim in this Court suffers from a similar lack of evidence.  He has provided no evidence explaining what arguments or evidence either his trial attorney or his appellate attorney should have presented to challenge the imposition of the section 12022.53(d) sentencing enhancement, nor has he shown how any such evidence would have resulted in either the trial court deciding not to impose the enhancement or the appellate court overturning the imposition of the enhancement.  *See* Pet. at 31–34; Traverse at 9–11.  Accordingly, Long has not shown that the denial of this claim was either contrary to, or an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694.  Nor has he shown it was based on an unreasonable determination of the facts.  28 U.S.C. § 2244(d)(2).  Thus, Long is not entitled to relief.

### 4.   Competency (Ground Four)

In ground four, Long contends he "was deprived of due process and a fair trial because [his] mental incompetency prevented him from entering a plea of not guilty by reason of insanity." Pet. at 35; Traverse at 11–12.  He also claims that his trial counsel was ineffective for failing to enter a plea of not guilty by reason of insanity. Pet. at 35; Traverse at 11–12.  Because these claims are procedurally defaulted, *see supra* Section I, there is no last reasoned state court decision to which this Court can defer.  Thus, the Court must conduct a de novo review of the claims.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2003) (where there is no state court decision on a claim to which the federal court can defer, the Court must conduct a de novo review of the claim).

The Ninth Circuit has explained the clearly established Supreme Court law regarding competency as follows:

> It is undisputed that "the conviction of an accused person while he is legally incompetent violates due process." *Pate [v. Robinson]*, 383 U.S. at 378, 86 S.Ct. 836. To be competent to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope [v. Missouri]*, 420 U.S. at 171, 95 S.Ct. 896. Where the evidence before the trial court raises a "bona fide doubt" as to a defendant's competence to stand trial, the judge on his own motion must conduct a competency hearing. *Pate*, 383 U.S. at 385, 86 S.Ct. 836. This responsibility continues throughout trial, *Drope*, 420 U.S. at 181, 95 S.Ct. 896, and we apply the same bona fide doubt standard to determine whether an additional competency hearing was required. *See Amaya-Ruiz v. Stewart*, 121 F.3d 486, 489 (9th Cir.1997). We have explained that under *Drope* and *Pate*, the test for such a bona fide doubt is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required," and "one of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180, 95 S.Ct. 896 (paraphrasing *Pate*, 383 U.S. at 385, 86 S.Ct. 836).

*Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010).

In evaluating a claim of failure to conduct a competency hearing, "retrospective determinations of incompetence" are "disfavored." *See Williams v. Woodford*, 384 F.3d 567, 608 (9th Cir. 2004). Only when a court can "conduct a meaningful hearing to evaluate retrospectively the competency of the defendant" should a court undertake such a task. *Moran v. Godinez*, 57 F.3d 690, 696 (9th Cir. 1995), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003); *see also Drope*, 420 U.S. at 183.

Long has provided no evidence to support his claim that he suffered from mental illness or incompetency at the time of his trial.  Indeed, Long was able to testify at trial in a coherent and clear manner and did not display any evidence of incompetency or mental illness.  *See* Lodgment No. 19, ECF No. 25-10 at 7–105.  His testimony demonstrates that he understood "the nature and object of the proceedings against him," was able to "consult with counsel," and "assist[ed] in preparing his defense."  *Drope*, 420 U.S. at 171.  His current filings also do not demonstrate any evidence of incompetency or mental illness.  Given this lack of evidence to support his claim of incompetence, Long also has not established either the deficient performance prong or the prejudice prong of *Strickland*.  *See Strickland*, 466 U.S. at 688, 694.  Accordingly, Long is not entitled to relief as to these claims.

### 5.   *Sufficiency of Evidence (Ground Five)*

Finally, Long was convicted of the first-degree murder of Perez.  *See* Lodgment No. 21, ECF No. 25-12 at 3–4.  As previously discussed, the elements of that crime are: (1) the unlawful killing of a human being, (2) with malice aforethought, and (3) with premeditation and deliberation.  Cal. Penal Code §§ 187–189.  Long contends there was insufficient evidence to establish that the murder of Perez was premeditated.  *See* Pet. at 38–39; Traverse at 12.  He also claims that his appellate counsel was ineffective for failing to raise this claim on appeal.  *Id.*  As with ground four, because these claims are procedurally defaulted, *see supra* Section I, there is no last reasoned state court decision to which this Court can defer.  Thus, the Court must conduct a de novo review of these claims.  *Pirtle*, 313 F.3d at 1167.

In California, a finding of premeditation does not require any specific amount of time or thought.  The California Supreme Court has described premeditation as follows:

> """In this context, 'premeditated' means 'considered beforehand,' and 'deliberate' means 'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.'"" ( [*People v. Jurado* (2006) 38 Cal.4th 72, 118, 41 Cal.Rptr.3d 319, 131 P.3d 400].) "'An intentional killing is premeditated and

deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse."' (Ibid.; *see also People v. Anderson* (1968) 70 Cal.2d 15, 24–34, 73 Cal.Rptr. 550, 447 P.2d 942 [ ].) 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .' (*People v. Thomas* (1945) 25 Cal.2d 880, 900 [156 P.2d 7].)" (*People v. Potts* (2019) 6 Cal.5th 1012, 1027, 245 Cal.Rptr.3d 2, 436 P.3d 899.) . . .

In *People v. Anderson*, *supra*, 70 Cal.2d at page 26, 73 Cal.Rptr. 550, 447 P.2d 942 (*Anderson*), we identified "three basic categories" of evidence this court has generally found sufficient to sustain a finding of premeditation and deliberation: (1) planning activity, or "facts about how and what defendant did prior to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing"; (2) motive, or "facts about the defendant's prior relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim"; and (3) manner of killing, or "facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' . . . ." (*Id.* at pp. 26–27, 73 Cal.Rptr. 550, 447 P.2d 942.)

In the years since *Anderson*, "'we have emphasized that its guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight.'" (*People v. Rivera* (2019) 7 Cal.5th 306, 324, 247 Cal.Rptr.3d 363, 441 P.3d 359.) *Anderson* provides "a framework to aid in appellate review," but it does not "define the elements of first degree murder or alter the substantive law of murder in any way." (*People v. Perez* (1992) 2 Cal.4th 1117, 1125, 9 Cal.Rptr.2d 577, 831 P.2d 1159.)

*People v. Morales*, 10 Cal. 5th 76, 88 (2020).

Long testified that he was arguing with Perez as she sat in her locked car in Long's garage. *See* Lodgment No. 18, ECF No. 25-9 at 21–24. At some point during the argument,

20-CV-1291 JLS (RBB)

Long got his gun from his kitchen.  *Id.* at 24.  Long testified that he tapped the gun on the window to antagonize Perez and accidentally shot her.  *Id.* at 26.  Two of Long's former girlfriends, Diana Diaz and Ellie Sorling, however, testified he became violent when drunk and physically assaulted them, including choking them, punching them, slamming their heads into the ground, and pulling their hair out.  *See* Lodgment No. 17, ECF No. 25-8 at 35–47; Lodgment No. 18, ECF No. 25-9 at 78–83.  During one of these assaultive episodes, Diaz tried to escape Long by hiding in her car in the garage.  *See* Lodgment No. 17, ECF No. 25-8 at 40.  Long had tried to prevent her from leaving the house by taking her car keys away, and he attempted to use the keys to unlock the car doors and gain access to her, but Diaz continuously locked the car from the inside.  *See id.* at 41.  Long then began punching the windshield.  *See id.* at 40.  Given such evidence of Long's past violent behavior toward his girlfriends, a jury reasonably could have concluded that Long retrieved the gun because he planned to kill Perez.  A reasonable jury also could conclude from these facts that Long, who had been drinking the day of Perez's murder, *see* Lodgment No. 18, ECF No. 25-9 at 17, premeditated the murder because he became physically violent towards intimate partners when drunk.  *See People v. Spector*, 194 Cal. App. 4th 1335, 1383 (2011) (defining motive as "a state-of-mind or state-of-emotion fact[,] . . . an idea, belief, or emotion that impels or incites one to act in accordance with his state of mind or emotion," and upholding the admission of prior, similar assaultive behavior to show motive).  Finally, a reasonable jury could conclude that Long premeditated Perez's killing because the manner of killing, a shot to the head, was designed to kill and not injure.  *See* Lodgment No. 17, ECF No. 25-8 at 56.

Because there was sufficient evidence to support the verdict, Long also has not established that his appellate counsel was ineffective for failing to raise this issue on appeal.  *See Smith*, 528 U.S. at 285.  Accordingly, Long is not entitled to relief as to these claims.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Petition (ECF No. 1).

/ / /

Further, Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability will issue when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253; *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court concludes that reasonable jurists could not find the constitutional claims debatable and accordingly **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  January 19, 2022

Hon. Janis L. Sammartino
United States District Judge